UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANN M. T.,

           Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

CASE NO. 3:24-CV-5789-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action under 42 U.S.C. § 405(g) seeking judicial review of Defendant's denial of her application for supplemental security income benefits ("SSI").[1] After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred in his evaluation of Plaintiff's testimony about the severity of her symptoms. Had the ALJ properly considered this testimony, Plaintiff's residual functional capacity ("RFC") may have included additional limitations, or the ultimate determination of disability may have changed. The ALJ's error is, therefore, not harmless, and this matter is reversed and remanded pursuant to sentence four of 42

---

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 1

U.S.C. § 405(g) to the Commissioner of Social Security ("Commissioner") for further proceedings consistent with this order.

I.  **Background**

Plaintiff filed a claim for SSI in June 2022, alleging disability beginning on February 26, 2022. Dkt. 7, Administrative Record ("AR") 192–98. Her application was denied at the initial level and on reconsideration. AR 78–93. She requested a hearing before an ALJ, which took place on February 13, 2024. AR 45–77, 104. Plaintiff was represented by counsel at the hearing. *See* AR 45. At the hearing, Plaintiff amended the alleged date of disability onset to the protective filing date of June 16, 2022. AR 51. On April 17, 2024, the ALJ issued an unfavorable decision denying benefits. AR 15–37.

Plaintiff requested review of the ALJ's decision and submitted additional medical evidence to the Appeals Council. AR 38–44, 172–73, 318. The Appeals Council found this evidence did not show a reasonable probability of changing the outcome of the decision and denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1–7. Plaintiff appealed to this Court. *See* Dkts. 1, 5.

In the final decision, the ALJ found Plaintiff had the severe impairments of degenerative disc disease with spinal stenosis, asthma, status post fracture left lower extremities, left knee degenerative joint disease, thyroid disorder, obesity, diabetes mellitus, scoliosis, cholelithiasis and hepatic steatosis, and tachycardia. AR 20–21. Despite these impairments, the ALJ found Plaintiff could perform light work as defined in 20 C.F.R. § 416.967(b) with certain caveats:

> [T]he individual can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The individual can frequently balance, stoop, kneel, crouch, and crawl. The individual can tolerate occasional exposure to extreme environmental heat and cold, and to workplace vibration. The individual can tolerate no exposure to atmospheric conditions as defined in Selected Characteristics of Occupations. The individual can tolerate occasional exposure to workplace hazards such as

unprotected heights and exposed, moving machinery. The individual requires the ability to alternate between sitting and standing at will while remaining on task.

AR 22.

## II. Standard of Review

When reviewing the Commissioner's final decision under 42 U.S.C. § 405(g), this Court may set aside the denial of social security benefits if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

"[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115.

## III. Discussion

Plaintiff argues the ALJ erred in his consideration of certain medical evidence and Plaintiff's testimony about the severity of her symptoms, leading to an erroneous RFC and step five findings. Dkt. 12 at 1. She contends the proper remedy for these errors is remand for further

proceedings and to allow the ALJ to consider the evidence submitted to the Appeals Council.[2] *Id.* at 1, 16.

      A.  *Subjective Symptom Testimony*

Plaintiff contends the ALJ failed to properly evaluate her testimony about the severity of her symptoms. *Id.* at 7. "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Garrison*, 759 F.3d at 1014. At the first step, the ALJ determines whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* This evidence need not validate the severity of the alleged symptoms; rather, "the medical evidence need only establish that the impairment could reasonably be expected to cause some degree of the alleged symptoms." *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021).

If the claimant satisfies this first step and there is no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1112 (quoting *Garrison*, 759 F.3d at 1014–15). "This standard is 'the most demanding required in Social Security cases.'" *Id.* (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). To meet this standard, ALJs must "identify which testimony [they] found not credible and why." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).

The Ninth Circuit has reaffirmed that the clear and convincing standard requires the ALJ to make "specific finding[s]:"

---

[2] Although Plaintiff asks that the Court credit her testimony as true, she does not argue that she is entitled to an immediate award of benefits. *See* Dkt. 12 at 13, 15–16.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 4

> [A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination. To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.

*Smith*, 14 F.4th at 1112 (quoting *Brown-Hunter*, 806 F.3d at 489). "The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). As with all findings by the ALJ, the specific, clear, and convincing reasons also must be supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g).

Plaintiff initially asserted her ability to perform her previous work as a massage practitioner was limited by back issues, left leg injury and knee issues, a broken rib, and an autoimmune disorder. AR 229–36, 240. At the hearing on February 13, 2024, Plaintiff testified about a variety of ongoing medical problems, including asthma, adrenal insufficiency, diabetes, heart problems, and back and neck pain.

Plaintiff testified her asthma was well-controlled with Prednisone. AR 60–61. She stated her doctors had not been able to find an alternative treatment to control her asthma symptoms, but the long-term Prednisone use had led to adrenal insufficiency and associated fluid retention and edema in her extremities. AR 57, 60–61. She stated the severity of the swelling varied—sometimes the swelling was minor enough that she was able to put on her shoes normally, but at other times, the swelling was so severe that fluid "leak[ed] out of [her] shins." AR 57. She stated the medication she had been prescribed to address this issue had only been "partially successful," and some days the swelling prevented her from putting on shoes and socks despite taking the medication. AR 57–58.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 5

Plaintiff testified she experienced dizziness on standing due to a heart condition. AR 58. She stated this was "not the kind of dizziness that passes like, you know, you stand up, wait for it, and then it gets better[.]" AR 65. Rather, because of a circulation issue, her vision "[went] black" and she became unable to see when she stood up. *Id.*

Plaintiff also described "debilitating" pain in her back and neck. AR 58. She rated her usual lower back pain as ranging from a six to a nine out of ten. AR 59. She stated standing up aggravated her back pain immediately, and she had been using back braces for about two years. AR 58–59. Plaintiff rated her typical neck pain at an eight or nine out of ten, and stated she was unable to turn her head to the left. AR 61–62. She stated she had some days when her pain was "more manageable," rating a four or six out of ten rather than an eight or nine. AR 67. Plaintiff also testified she experienced muscle spasms in two areas of her neck that radiated down into her left shoulder and lower back. AR 62. When she had a muscle spasm, she had to lie down for 15 to 20 minutes before the spasm subsided. AR 62–63. Plaintiff testified she experienced five or six muscle spasms per day. AR 63.

Because of these symptoms, Plaintiff testified she was not able to spend much time on her feet. AR 64. Plaintiff stated she was fairly independent in her personal care because her house was set up so that she could do most things seated, such as brushing her hair while seated on the toilet or showering while seated on a shower bench. AR 67–68. She stated she could stand long enough to get her back braces fastened and use grab bars to move from her bed to the bathroom. AR 64. Plaintiff stated she was able to fold laundry while seated, but she was not able to stand long enough to help with any other household chores. AR 67. When asked whether she could pick up a gallon of milk in the refrigerator and put it on the counter, she stated she "couldn't stand up long enough to do that." *Id.*

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 6

1    Plaintiff began using a wheelchair after fracturing her leg in September 2022. AR 65. She

2  stated she still used the wheelchair if she "had to go anywhere where there would be an

3  expectation of standing," although she noted she rarely went anywhere but to medical

4  appointments. AR 66. She described the process typically involved in moving around with

5  assistance from her significant other:

> I can get from the car, lean[ing] on Nathan, to the treatment room, and then sit down in the waiting room, and then he'll go and check me in, and then like he will help me to the scale, because they always weigh you when you get there, and I hold on to the little railing things on the scale, and then I get to the room where you wait for the doctor, and I can sit there, so I kind of hopscotch it down that way, like lean on Nathan and sit down, lean on Nathan and sit down. But if it's some place where I had to like try and stand up like any kind of a line, like if you had to go to a line for something, like for example in the bank, I couldn't do that without a wheelchair.

*Id.*

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but found Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the evidence in the record. AR 23. The ALJ found Plaintiff's "assertions appear[ed] out of proportion and not as debilitating as alleged" for three reasons: (1) treatment for her impairments during the relevant period was limited to conservative treatment options, (2) the record suggested her symptoms improved with appropriate treatment, and (3) the objective evidence in the record supported a greater level of functioning than alleged. AR 28.

> 1. Conservative Treatment

The ALJ first stated, "[g]iven the claimant's allegations, one would expect to see more progressive treatment options," and "the lack of progressive treatment during the relevant period for the claimant's alleged impairments appears to be more consistent with the residual functional capacity than with the claimant's allegations." *Id.* Evidence of conservative treatment is an

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 7

acceptable reason to discount testimony about the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). "Any evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017). A conservative course of treatment is not a proper basis for discounting a Plaintiff's subjective symptom testimony "where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

Plaintiff testified that she had been taking Prednisone for many years, despite significant side effects, because her providers had not been able to determine another treatment regimen to sufficiently manage her asthma symptoms. AR 59–61. She stated she could not take non-steroidal anti-inflammatory drugs to manage her pain because she was allergic to them, and other pain medication had not been effective. AR 59. She had experienced limited relief from acupuncture, massage therapy, chiropractic treatment, physical therapy, and use of the hot tub, but none of these interventions had resolved her symptoms. *See* AR 59–64. Plaintiff also testified that she was not eligible for surgery because of her Prednisone use. AR 60; *see also* AR 770 ("Not able to have surgery because on chronic steroids.").

Plaintiff argues that her long-term Prednisone use is not reasonably characterized as conservative treatment. Dkt. 12 at 8–9; Dkt. 15 at 5. The ALJ did not provide any explanation for why he considered Plaintiff's treatment regimen conservative, nor did he acknowledge Plaintiff's ineligibility for surgery when finding Plaintiff had not pursued progressive treatment. Because of this lack of explanation, the Court is unable to discern whether the ALJ considered and rejected this evidence or failed to consider it at all. *See Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 8

conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."). Accordingly, the Court cannot conclude this reason for discounting Plaintiff's testimony about the severity of her symptoms is a clear and convincing reason supported by substantial evidence.

2. <u>Improvement of Symptoms</u>

Next, the ALJ found "the record suggests the claimant's symptoms improved with appropriate treatment." AR 28. "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).

In support of his finding, the ALJ cited to five treatment notes in the record. AR 28 (citing AR 1258, 1577, 1614, 1959, 2187). The ALJ referenced two treatment notes from October 2022 and February 2023 for follow-up orthopedic appointments after Plaintiff's ankle fracture at which Plaintiff reported "doing well" with physical therapy and lessening pain in her ankle. *See* AR 1258–60, 1613–16. These visits and notes do not address Plaintiff's other chronic conditions. *See id.*

The ALJ also cited to a note from a January 17, 2023, gastroenterology visit that, he found, "revealed the claimant was 'currently well-controlled.'" AR 28 (quoting AR 1577). The provider at this visit noted Plaintiff's asthma was "currently well controlled." AR 1577. This is consistent with Plaintiff's testimony that her asthma was largely controlled by Prednisone. *See* AR 60–61. The provider later noted that Plaintiff's symptoms of diarrhea and abdominal pain were "well controlled" with daily Imodium use. AR 1578. Again, the chronic conditions related to Plaintiff's ongoing symptoms were not addressed at this visit. *See* AR 1577–78.

Next, the ALJ cited to a note from a January 27, 2023, physical therapy appointment at which Plaintiff reported her lower back had been "feeling good" for the past couple of days, rating her pain level as three or four out of ten. AR 28 (citing AR 1959). However, the ALJ does not explain why this is inconsistent with Plaintiff's testimony that, on good days, her pain level was a four to six out of ten, nor does it demonstrate any sustained improvement in Plaintiff's pain symptoms. *See* AR 67.

Finally, the ALJ cited a pulmonary clinic note from March 23, 2023, for the proposition that Plaintiff "could walk 3-6 miles a day without feeling shortness of breath when on [her] current [P]rednisone burst." AR 28 (citing AR 2187). But the provider also noted Plaintiff had been "at this dose for at least 5-6 years" and gave no indication that Plaintiff was able to walk three to six miles at the time of the appointment. AR 2187. This note, like the other cited records, does not support the ALJ's conclusion that Plaintiff's symptoms had improved with appropriate treatment. Accordingly, this is not a sufficiently clear and convincing reason for discounting Plaintiff's testimony.

3. Inconsistency with Objective Evidence

Finally, the ALJ wrote that "the objective evidence found in the medical record during the relevant period support[ed] a greater level of function that one alleged by the claimant." AR 28. When a claimant has established a medical impairment reasonably likely to be the cause of alleged pain, an ALJ may not reject the claimant's testimony "solely because the degree of pain alleged is not supported by objective medical evidence." *Bunnell v. Sullivan*, 947 F.2d 341, 346–47 (9th Cir. 1991). "Although an ALJ may use '*inconsistent* objective medical evidence in the record to discount subjective symptom testimony,' the ALJ 'cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 10

evidence fully corroborating every allegation within the subjective testimony.'" *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (quoting *Smartt*, 53 F.4th at 498). "[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

The ALJ cited to "unremarkable findings" on physical examinations at various points in the record, including unremarkable objective physical findings regarding Plaintiff's neck, heart, lungs, range of motion, and muscle strength. AR 28. But, as noted above, objective medical evidence standing alone is not a sufficient basis to reject pain testimony. Nor did the ALJ identify specific inconsistencies between the cited records and Plaintiff's testimony. For example, the ALJ cited two instances in which Plaintiff's extremities exhibited no edema. AR 28 (citing AR 772–73, 2986). But Plaintiff testified that the level of swelling in her lower extremities varied from day to day. *See* AR 57–58. The ALJ did not explain how any of the cited records were inconsistent with Plaintiff's testimony. Because the ALJ failed to "specifically identify the testimony she or he finds not to be credible" and "explain what evidence undermines the testimony[,]" *Holohan*, 246 F.3d at 1208, this is not a sufficiently specific, clear, and convincing reason for rejecting Plaintiff's testimony.

Because the ALJ did not provide any sufficiently specific, clear, and convincing reasons for discounting Plaintiff's testimony about the severity of her symptoms, the ALJ erred. This error was not harmless. Had the ALJ properly considered this testimony, Plaintiff's RFC may have included additional limitations, or the ultimate determination of disability may have changed. Accordingly, remand is appropriate.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 11

B. *Remaining Issues*

Plaintiff further contends the ALJ failed to properly evaluate certain medical evidence, and she argues that the RFC and step five findings are not supported by substantial evidence. Dkt. 12 at 1. As noted above, the Court concludes the ALJ committed harmful error in assessing Plaintiff's subjective symptom testimony and remand for further proceedings is appropriate. Due to this error, the ALJ must re-evaluate all the medical evidence, including the evidence submitted to the Appeals Council. Accordingly, on remand, the ALJ is instructed to re-evaluate the entire sequential evaluation process. *See* Social Security Ruling 96-8p, 1996 WL 374184 (1996) (an RFC "must always consider and address medical source opinions"); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"); *Watson v. Astrue*, No. ED CV 09-1447-PLA, 2010 WL 4269545, at *5 (C.D. Cal. Oct. 22, 2010) (finding the RFC and hypothetical questions posed to the vocational expert defective when the ALJ did not properly consider two physicians' findings).

IV. Conclusion

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled beginning June 16, 2022. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 23rd day of May, 2025.

David W. Christel
United States Magistrate Judge